IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DEAN MOSTOFI, et al.
:
:
v. : Civil Action No. DKC 11-2177
:
CITIMORTGAGE, INC.
:
:

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this case is a motion to remand filed by pro se Plaintiffs Dean Mostofi and Young Sun Kim. (ECF No. 17). The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, Plaintiffs' motion will be denied.

**I. Background**

The following facts are alleged in the complaint. (ECF No. 2). On or about April 17, 2007, Plaintiff Young Sun Kim signed a promissory note ("the Note") payable to Defendant CitiMortgage, Inc. ("Citi"), in the amount of $600,000 for the purpose of refinancing the mortgage on Plaintiffs' home. Mrs. Kim and her husband, Plaintiff Dean Mostofi, jointly executed a deed of trust securing the loan. Approximately two years later, Plaintiffs entered into a modification agreement with Citi, which, inter alia, "reduced the Notes' interest rate to 2.80%

1

from April 1, 2009 until April 1, 2010, and to 4% thereafter." (*Id.* at ¶ 8.2).

A Citi representative contacted Plaintiffs on or about November 16, 2010, and advised that "Citi had 'inadvertently' destroyed the fully executed Modification Agreement and that there were no paper or digital copies of same in existence." (*Id.* at ¶ 9). The representative requested that Plaintiffs execute a "revised version of the 2009 Modification Agreement to replace the one destroyed by Citi," which Plaintiffs refused to do. (*Id.* at ¶ 10).

In or around May 2011, "Citi unilaterally raised the interest rate of the Note from 4% to 6%, in violation of the existing Modification Agreement." (*Id.* at ¶ 11). Plaintiffs promptly contacted Defendant and advised of their position that the increased interest rate violated the terms of the modification agreement. In response, Citi "suggested that the best way to resolve the issue would be for Plaintiffs to apply for a Home Affordable Modification Program ('HAMP') [loan modification] that . . . would provide similar or better terms than the existing Modification Agreement." (*Id.* at ¶ 14). Citi received Plaintiffs' HAMP application on or about May 25, 2011, and advised Plaintiffs that it would be processed within one week.

Since that time, Plaintiffs have not heard from Citi as to the status of their HAMP application. Citi has demanded further documentation from Plaintiffs, without explaining why this was necessary, and has been nonresponsive to Plaintiffs' inquiries. Moreover, interest has continued to accrue on the promissory note at the rate unilaterally imposed by Citi in May 2011. This has resulted in an increase of approximately $1,000 to Plaintiffs' monthly mortgage payments.

Plaintiffs commenced this action on June 30, 2011, by filing a complaint in the Circuit Court for Montgomery County, Maryland, alleging breach of contract and violation of the Maryland Consumer Protection Act. Plaintiffs request a declaratory judgment that, *inter alia*, the modification agreement is valid and enforceable and seek "damages in an amount equal to all excess payments made to Citi since May 2011" (ECF No. 2, at 7), but explicitly "disavow any recovery in excess of $74,900.00 in sum total" (*id*. at ¶ 21.1 (emphasis in original)).

Defendant timely removed to this court, citing diversity of citizenship as the jurisdictional basis. (ECF No. 1). On September 2, Plaintiffs filed the pending motion to remand, arguing that the court may not exercise diversity jurisdiction because the amount in controversy requirement is not met. (ECF No. 17).

## II. Analysis

The removing party bears the burden of proving that removal was proper. *See Greer v. Crown Title Corp.*, 216 F.Supp.2d 519, 521 (D.Md. 2002) (citing *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994)). On a motion to remand, the court must "strictly construe the removal statute and resolve all doubts in favor of remanding the case to state court." *Richardson v. Philip Morris Inc.*, 950 F.Supp. 700, 702 (D.Md. 1997) (internal quotation marks omitted). This standard reflects the reluctance of federal courts "to interfere with matters properly before a state court." *Id*. at 701.

Title 28 U.S.C. § 1441 allows defendants to remove an action "brought in a State court of which the district courts of the United States have original jurisdiction." Pursuant to 28 U.S.C. § 1332(a)(1), district courts have original jurisdiction "of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between . . . citizens of different States."

It is undisputed that the diversity requirement is satisfied in this case, as Plaintiffs are Maryland residents and Defendant is incorporated in New York and has its principal place of business in Missouri. (ECF No. 1 ¶ 5; ECF No. 2 ¶ 1). The parties disagree, however, as to whether the amount in controversy meets the jurisdictional minimum.

Generally, the amount requested in the complaint determines the amount in controversy. *See Momin v. Maggiemoo's Int'l, L.L.C.*, 205 F.Supp.2d 506, 508-09 (D.Md. 2002) (citing *Angus v. Shiley, Inc.*, 989 F.2d 142, 145 (3rd Cir. 1993)). When a dispute arises as to whether an amount in controversy is sufficient to confer jurisdiction and the complaint specifies an amount in damages that does not exceed $75,000, "removal is proper only if the defendant can prove to a 'legal certainty' that the plaintiff[s] would actually recover more than that if [they] prevailed." *Momin*, 205 F.Supp.2d at 509. Thus, the burden is on Defendant to prove to a legal certainty that the amount in controversy requirement is satisfied.

While Citi acknowledges that the complaint does not claim damages exceeding $75,000, it contends that a much greater amount is at stake:

> [T]he cost to [Citi] of Plaintiffs' requested declaratory relief would be greater than $75,000. For example, Plaintiffs seek a declaratory judgment that the maximum interest rate permitted on their Note is four percent and alleged that [Citi] raised the interest rate on the Note from four percent to six percent in or around May 2011. According to Plaintiffs' allegations, this two percent change in the interest rate resulted in an increase of $1,000 in Plaintiffs' monthly mortgage payment. Assuming there are 26 years remaining on the 30-year loan (May 2011 (date of purported violation) – April 17, 2007 (alleged date of origination) = 4 years elapsed) – this would result in purported damages of $312,000

5

> ($1,000 x 12 months in a year x 26 years). If the 2009 alleged loan modification reset the term of the loan to 30 years, the purported damages would even be higher: $336,000 ($1,000 x. 12 months in a year x 28 years). Thus, the potential cost to [Citi] exceeds $75,000, and the amount-in-controversy requirement is satisfied.

(ECF No. 23, at 3 (internal citations omitted)).

"In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 347 (1977). The United States Court of Appeals for the Fourth Circuit applies the "either-viewpoint" rule in determining the value of the object of the litigation. *See Gonzalez v. Fairgale Props. Co., N.V.*, 241 F.Supp.2d 512, 517 (D.Md. 2002). Under that rule, a court must consider "the potential pecuniary effect that a judgment would have on either party to the litigation." *Liberty Mut. Fire Ins. Co. v. Hayes*, 122 F.3d 1061, at *3 (4th Cir. 1997) (per curiam) (citing *Government Employees Ins. Co. v. Lally*, 327 F.2d 568, 569 (4th Cir. 1964)). More specifically, the relevant inquiry is whether "the 'direct pecuniary value' of the right the plaintiff seeks to enforce, or the cost to the defendant of complying with any prospective equitable relief exceeds $75,000." *Lee v. Citimortgage, Inc.*, 739 F.Supp.2d 940, 946 (E.D.Va. 2010) (quoting *Lee School Lofts, L.L.C. v. Amtax*

*Holdings 106 LLC*, No. 3:08cv427, 2008 WL 4936479, at *3 (E.D.Va. Oct. 29, 2008)). In making a determination, a court "should consider all the evidence in the record" and "specify exactly what relief the Plaintiff seeks [in order] to understand what evidence might be relevant to its pecuniary value." *Id*. (internal marks and citations omitted).

Defendant's argument rests on the notion that the prospective cost to it, if the 2009 modification agreement is determined to be valid and enforceable, will exceed $75,000 over the course of an extended term. This argument is persuasive. Indeed, the complaint recites that the difference between interest at four percent, the rate allegedly agreed to under the modification agreement, and six percent, the rate Citi unilaterally imposed in May 2011, is roughly $1,000 per month. Thus, as Defendant's argument goes, so long as the term of the loan extends just over six years, it would suffer a loss in excess of $75,000 based on a hypothetical declaratory judgment alone. While neither party has provided any evidence as to the term of the loan, the remaining balance, and/or the history of payments, Plaintiffs' assertion that two percent interest, *i.e.*, the difference between six percent and four percent interest, equates to about $1,000 per month is instructive. If two percent is equal to $12,000 per year ($1,000 monthly x 12 months), then the outstanding principal on the loan would be

7

around $600,000 (*i.e.*, if 1% annually equates to $6,000, then 100% is $6,000 x 100, or $600,000), which is the amount of the original loan. This suggests that Plaintiffs have made no progress in paying down the principal in over four years since the loan originated. The likelihood that the entire principal would be paid prior to the time that an award of declaratory relief in favor of Plaintiffs would result in a loss to Defendant of over $75,000 is virtually non-existent.

In arguing otherwise, Plaintiffs cite a line of cases in the Seventh Circuit for the proposition that "[i]f the plaintiff commits himself to seek no more than $75,000, the petition to remove must be denied." (ECF No. 17 ¶ 5). Plaintiffs quote, for example, *In re StarLink Corn Products Liability Litigation*, 211 F.Supp.2d 1060, 1066 (N.D.Ill. 2002), which explained that parties seeking to remand "could have avoided federal jurisdiction by agreeing to cap recovery, both monetary and injunctive, below the $75,000 threshold, before their cases were removed."[1] According to Plaintiffs, this is exactly what

---

[1] The other cases cited by Plaintiffs stand for the same proposition. *See ANR Pipeline Co. v. 62.026 Acres of Land*, 389 F.3d 716, 718 (7th Cir. 2004) ("if the plaintiff commits himself to seek no more than $75,000, the petition to remove must be denied"); *In re Brand Name Prescription Drugs Antitrust Litigation*, 248 F.3d 668, 670-71 (7th Cir. 2001) ("Had the plaintiffs, before the removal of the case to federal court, stipulated that they were seeking less than [the jurisdictional minimum], the court would have been required to remand the case

happened in this case and the complaint should, accordingly, be remanded. This argument fails to account for the pecuniary value of the two percent interest going forward. Defendant's position in this litigation will apparently be that the alleged modification agreement either never existed or was somehow superseded such that it was within its rights to raise the interest rate to six percent in May 2011. If Plaintiffs were to prevail on their request for declaratory relief, the cost of such relief would be measured at two percent of the principal ($600,000), presumably *per annum*, over the remaining term of the loan. In short, Plaintiffs' request for declaratory relief is fundamentally at odds with their self-imposed cap of $74,900.

Thus, Defendant has established to a legal certainty that the amount in controversy exceeds the jurisdictional minimum. Because it is undisputed that the parties are also diverse, Defendant properly removed to this court based on diversity jurisdiction. Accordingly, Plaintiffs' motion to remand will be denied.

---

to state court without further inquiry."); *Workman v. United Parcel Service, Inc.*, 234 F.3d 998, 1000 (7th Cir. 2000) (same).

## III. Conclusion

For the foregoing reasons, Plaintiffs' motion to remand (ECF No. 17) will be denied.  A separate order will follow.

                                                              _____/s/_____
                                                              DEBORAH K. CHASANOW
                                                              United States District Judge